IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DEWARD DALE WOFFORD, | § | Case No. 18-40533 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| | § | |
| JUDD, THOMAS, SMITH & COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 18-4055 |
| | § | |
| DEWARD DALE WOFFORD and | § | |
| CHRISTOPHER MOSER, TRUSTEE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

On May 22, 2019, this Court conducted a trial on the "Original Complaint for Interpleader" filed by Judd, Thomas, Smith & Company ("**JTS**") against Deward Dale Woffard (the "**Debtor**") and Christopher J. Moser as Chapter 7 Trustee (the "**Trustee**"). The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[1]

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

1

## RELEVANT FACTS

On March 13, 2018, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. The Court appointed Christopher J. Moser as the Chapter 7 Trustee for the Debtor's estate. The Debtor received his bankruptcy discharge on June 29, 2018.

The Debtor is a certified public accountant. Prior to bankruptcy, he operated an accounting practice as a sole proprietorship known as Dale Woffard, CPA. The Debtor sold his business to JTS in July 2016. The Debtor, as seller, and JTS, as buyer, executed an Asset Purchase Agreement ("**APA**") whereby JTS purchased the business and engaged the Debtor as a consultant. JTS agreed to pay the Debtor 20% of annual collections for five years, which the APA defined as the "term" of the agreement.

As relevant to this proceeding, Article IV, Section (6) of the APA contained the following a non-compete agreement:

> During the Term, and notwithstanding any earlier termination of the Consulting Agreement, Seller shall not compete with Buyer in the performance of accounting and bookkeeping, tax compliance, tax planning, tax return preparation, professional or management consulting, attestation or other services previously provided by Seller for clients located in whole or in part in any of Dallas, Denton, Collin or Tarrant County, or any county adjoining such counties. Services for the Excluded Client Accounts are excluded from the previous sentence. Seller shall also not solicit any current or future clients, employees or contractors of Buyer.

In addition, Article VI of the APA addressed default and remedies as follows:

> If Buyer or Seller fails to perform any of the material terms, covenants, conditions, representations or obligations of this Agreement then the other party, subject to the requirements of notice provided herein, may pursue any remedy provided at law or in equity. The parties agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement, including, without limitation, Section (6) of Article IV, and that any party may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or other injunctive relief in order to enforce or prevent any violations of the provisions of this Agreement. Notwithstanding anything contained herein to the contrary, all parties shall be entitled to a written notice of

default and 15 days to cure before the other party may seek to exercise and remedies.

The Debtor did not list the APA in his bankruptcy schedules or seek to assume the APA as an executory contract under the Bankruptcy Code.

After the Debtor filed for bankruptcy, JTS made two payments to the Debtor under the terms of the APA totaling $4,120. On May 4, 2018, the Trustee made written demand on JTS to pay the Trustee all future payments owed to the Debtor under the APA. On May 24, 2018, the Debtor, through his attorney, gave written notice to JTS that the Debtor disputes the Trustee's position and demanded that JTS pay the Debtor all future payments owed to the Debtor under the APA

JTS initiated this adversary proceeding by filing an "Original Complaint for Interpleader" on June 12, 2018. The Trustee answered the Complaint and asserted a counterclaim against JTS for turnover of all past and future payments owed to the Debtor under the APA that JTS had not already paid the Debtor. The Trustee also asserted crossclaims against the Debtor for (1) a judgment declaring that all payments to the Debtor would be entitled to receive under the APA after filing for bankruptcy are property of his bankruptcy estate, and (2) turnover of the two payments the Debtor received after filing for bankruptcy.

JTS, through its counsel, is holding the payments that have come due each month under the APA since May 31, 2018. The total amount of the monthly payments was $20,685.51 as of $20,685.51 as of February 2019.

## DISCUSSION

### A.  Property of the Estate Generally – 22 USC § 541 (a)(1)

Section 541(a)(1) of the Bankruptcy Code provides that, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case" constitute property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). A chapter 7 bankruptcy estate generally

3

does not include future earnings or assets acquired after the filing of the petition. *Harris v. Viegelahn,* 135 S.Ct. 1829, 1835 (2015). However, when a pre-petition agreement provides for post-petition payments, courts historically looked to whether the post-petition payments were sufficiently rooted in the debtor's pre-bankruptcy past rendering such payments property of the estate. *See Segal v. Rochelle*, 382 U.S. 375 (1966).

In *In re Burgess*, 438 F.3d 493, 498–99 (5th Cir. 2006), the Fifth Circuit explained that the enactment of the Bankruptcy Code in 1978 made the two-part *Segal* inquiry unnecessary. Section 541 now governs what is considered property of the bankruptcy estate, and unlike former § 70(a)(5) of the Bankruptcy Act, § 541 expressly defines property "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. Thus, in *Burgess*, the Fifth Circuit concluded that the debtor's disaster relief for pre-petition crop loss was not property of the estate, because there was no legal right to relief at the time in which he filed bankruptcy, the legislature having not yet enacted a provision for disaster relief. *Id.* at 500.

### B. Exclusions from Property of Estate – 11 U.S.C. § 541(a)(6)

While § 541(a)(1) broadly defines property of the estate, certain assets are expressly excluded. As relevant to this case, § 541(a)(6) excepts from property of the estate "earnings from services performed by an individual debtor after commencement of the case." 11 U.S.C. § 541(a)(6). According to the Debtor, the payments due under the APA are excluded from the bankruptcy estate by § 541(a)(6) because the Debtor's agreement not to compete is a personal services contract.

"A personal services contract has been defined as '[a] contract which contemplates the performance of personal services involving the exercise of special knowledge, judgment, taste, skill, or ability.'" *Doltz v. Harris & Assocs.*, 280 F.Supp.2d 377, 388 (E.D. Pa. 2003) (quoting *In*

4

re *Compass Van & Storage Corp.*, 65 B.R. 1007, 1011 (Bankr. E.D.N.Y. 1986)).  Some examples of a personal services contract are "a contract to paint a portrait, write a novel, or perform other work requiring 'rare genius' and 'extraordinary skill.'"  *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F.Supp.2d 700, 705 (D. Md. 2001).  Because a trustee may not assume or assign an executory contract for personal services without the parties' consent, see *Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 106–07 (3rd Cir. 1990), some courts have held such a contract is excluded from the bankruptcy estate, *see, e.g.*, *Skiba v. Bimber (In re Bimber)*, 318 B.R. 297, 299 (Bankr. W.D. Pa. 2004) (collecting cases).

When a pre-petition contract imposes an affirmative obligation to provide personal services in order to receive post-petition payments, courts have generally found that the payments are not property of the estate.  In *In re Haynes*, 679 F.2d 718 (7th Cir. 1982), for example, the Seventh Circuit was faced with the issue of whether a military retiree's retirement pay constituted proceeds for services performed post-petition.  *Id.* at 719.  In exchange for retiree pay, the debtor was required to perform up to two months of active duty training every four years, if ordered to do so by the Secretary of the Navy, and to report to the Navy for a physical exam at least once every four years.  *Id.*  The *Haynes* court found that because the debtor had continuing required duties, his military retirement pay was more like wages than a pension, constituted compensation for "reduced current services," and thus was not property of the estate.  *Id.*

Various courts have recognized a difference between a personal services contract and a non-compete agreement.  The former requires affirmative actions by the employee, whereas the latter requires only that they refrain from certain actions.  *Managed Health Care Assocs. v. Kethan*, 209 F.3d 923, 929–30 (6th Cir. 2000) (collecting authority).  The Eight Circuit recently held that payments made pursuant to an employment contract are property of the estate when the debtor did

5

not have to perform any post-petition services to receive them. *Longaker v. Boston Scientific Corp.*, 715 F.3d 658, 662-63 (8th Cir. 2013)). *See also In re Andrews*, 80 F.3d 906, 912 (4th Cir. 1996) ("Although the Thirteenth Amendment prohibits a court from specifically enforcing a personal service contract, an agreement not to compete is specifically enforceable if it is reasonable."); *Symphony Diagnostic Servs. No. 1 Inc. v. Greenbaum*, 828 F.3d 643, 647 (8th Cir. 2016) ("the fact that Greenbaum and Tabanag signed the non-compete and confidentiality agreements in consideration for continued employment did not transform those agreements into personal services contracts, because the agreements imposed no obligation on them to take any affirmative action"). *See also In re Shearin,* 224 F.3d 346, 351 (4th Cir. 2000) (debtor's interest in law firm capital account and profits property of the estate); *Field v. Transcon. Ins. Co.,* 219 B.R. 115, 119 (E.D. Va. 1998) (debtor's bad faith claims against insurance company property of the estate); *In re Townside Construction, Inc.,* 582 B.R. 407, 416 (Bankr. W.D. Va. 2018) (debtor's lender liability claims property of the estate); *In re Gnadt,* 2015 WL 2194475 (Bankr. E.D. Va. May 7, 2015) (debtor's interest in 409A compensation plan property of the estate).

The APA in this case does not include an affirmative obligation of the Debtor to act. Instead, the APA requires the Debtor to refrain from competing in the future. Whether the obligation to refrain from competing falls within the scope of § 541(a)(6) is not a matter of settled law in this circuit. In the first reported decision addressing the issue, one court held that post-petition non-competition payments were not property of the estate when such payments were conditioned on the debtor's continued compliance with a covenant not to compete. *See In re Hammond*, 35 B.R. 219 (Bankr. W.D. Okla. 1983). While noting the existence of contrary

authority, the Fifth Circuit stated that *Hammond* is the more persuasive authority. *Matter of Walden*, 12 F.3d 445, 451-52 (5th Cir. 1994).[2]

Here, the Debtor sold his business and entered into the APA prepetition. When he filed for bankruptcy protection, the Debtor had a right to receive certain payments under the APA. There is no dispute that the non-compete agreement complies with Texas law.[3] The Debtor had no affirmative obligations under the APA when the bankruptcy was filed. The Debtor's only

---

[2] In *Walden*, the Fifth Circuit held that the creation of an annuity because of the settlement of litigation between an employer and an employee (subsequently a chapter 7 debtor) over a non-compete agreement did not preclude the annuity from being exempt under Texas law. The parties raised the issue of whether the annuity was excluded from the estate as a personal services contract under § 541(a)(6) on appeal, and the Fifth circuit declined to address it:

> Our interpretation is bolstered by other considerations. The Waldens assert persuasively that equity requires exemption of the annuity because, had GES not purchased it, the post-petition non-competition payments would not have been property of the bankruptcy estate under 11 U.S.C. § 541(a)(6), which provides that "earnings from services performed by an individual debtor after the commencement of the case" are not property of the estate. *See In re Hammond,* 35 B.R. 219 (Bankr. W.D. Okla. 1983) (holding that, because future non-competition payments were conditioned on the debtor's compliance with the covenant not to compete, and the debtor could not be compelled to perform services for the benefit of his creditors, post-petition non-competition payments were not property of the estate).

*Id.* at 451-52. The Fifth Circuit noted that

> *Hammond* was distinguished in *In re Bluman,* 125 B.R. 359, 367 (Bankr. E.D. N.Y. 1991). The non-competition payments in *Bluman* were not conditioned upon compliance with the covenant not to compete, but instead became due upon the transfer of the debtor's business. *Id.* The *Bluman* court disagreed with *Hammond's* conclusion that a court may not compel compliance with a covenant not to compete, pointing out that courts may enforce, by negative injunction, reasonable covenants not to compete. *Id.* It therefore held that the covenant not to compete was not a personal services contract and that the consideration paid for the covenant was not tantamount to earnings from services performed by the debtor. *Id.* Under the facts in the case before us, *Hammond* is the more persuasive authority.

*Id*. at fn 12.

[3] The Covenants Not to Compete Act ("the Act"), TEX. BUS. & COM. CODE §§ 15.50–15.52, generally provides that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. COM. CODE § 15.50(a). If the promisor breaches a covenant not to compete, § 15.51 provides that a court may award the promisee damages, injunctive relief, or both damages and injunctive relief. *Id.* at § 15.51.

obligation under the APA is to refrain from competing. Unlike the *Hammond* case where payments were conditioned upon compliance with the non-compete covenant, the Debtor's compliance is not conditioned upon payments due under the APA. Under the circumstances, the Court finds and concludes that the payments due under the APA constitute property of the estate and have not been excluded from the estate under § 541(a)(6).

## CONCLUSION

For all the foregoing reasons, the Court concludes that the amounts due post-petition under the APA are property of the debtor's bankruptcy estate. The Court will enter a separate judgment consistent with this Memorandum Opinion.

Signed on 9/30/2019

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE